**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 5:21-cr-00128-KKC-MAS-1 |
| v. ) | |
| ) | |
| CHARLES FREDERICK GREEN, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## DETENTION OPINION & ORDER

The Indictment alleges that Defendant Charles Frederick Green ("Green") unlawfully possessed a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). [DE 1]. The United States orally sought detention per 18 U.S.C. § 3142(f)(1)(E). [DE 8].

The Court held a detention hearing on December 20, 2021 and afforded both sides all procedural rights outlined in the Bail Reform Act ("BRA"). [DE 11]. At the hearing, the Court heard testimony from Bureau of Alcohol, Tobacco, and Firearms Special Agent Christopher Knotts ("SA Knotts") and from Defendant's girlfriend, Frenchilla Greer ("Ms. Greer"). [DE 12]. The parties further proffered and argued based on the Pretrial Services Report ("PSR"). [DE 13].

Per Federal Rule of Appellate Procedure 9(a) and for the reasons discussed in this Opinion, the BRA requires Green's detention on both flight and danger grounds.

### I.  BRA FRAMEWORK

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The key is simply evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). Given hearing informality,

1

the Court properly considers a wide range of proof. The nature and quality of proof, though, impacts its probative value and weight in the detention calculus. The § 3142(g) factors ultimately drive the overarching analysis.[1]

Detention premised on flight risk requires preponderant evidence that no conditions can reasonably assure Defendant's future appearance. *See, e.g., United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Danger-based detention demands clear and convincing evidence that no combination of conditions can reasonably assure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately

---

[1] The subsection directs the Court to balance the following:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including--
>     (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>     (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

address danger potential. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2nd Cir. 2001). Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

## II.     ANALYSIS

**A.     RISK OF FLIGHT**[2]

### 1.     Nature and Circumstances of the Offense

The Court first considers the nature and circumstances of the charged offense. 18 U.S.C. § 3142(g)(1). Though the nature of the charged offense, possession of a firearm as a convicted felon, does not suggest any inherent flight risk, the circumstances do indicate Green's inclination to seek to avoid criminal responsibility. This factor weighs slightly in favor of detention based on nonappearance risk.

SA Knotts testified that the instant alleged firearm possession was captured on surveillance video footage (without audio) outside of a convenience store. [Hearing Recording at 03:35]. Green was apparently engaging in some sort of an altercation with another individual outside of the store when Green displayed a firearm. [*Id.* at 05:01]. SA Knotts stated that the video reflected Green eventually handing the firearm to his fifteen-year-old son before police arrived; upon their

---

[2] There is no risk of international flight on this record. The Court assesses only the risk that Green will fail to appear for proceedings in this case or otherwise seek to evade prosecution.

arrival, Green's son fled with the firearm and attempted to discard it, but he was ultimately apprehended. Green disclaimed responsibility for the weapon. [*Id.* at 07:30]. Further, prior to Green's minor son receiving the firearm, the teenager had (according to SA Knotts' perception upon viewing) been attempting to deescalate the interaction between Green and the unknown individual.

These offense circumstances, as captured on video and described by SA Knotts, indicate that Green, when faced with looming accountability for his criminal conduct, enlisted his minor son in concealing the offense by passing the weapon to his son. That Green was willing to endanger his son to avoid responsibility for his own conduct is aggravating and suggests that he may be inclined to evade prosecution in this case through nonappearance. This factor thus favors detention.

### 2. **Weight of the Flight Evidence**

The second BRA factor looks to the weight of the evidence that Green poses a flight risk. 18 U.S.C. § 3142(g)(2). *See United States v. Sykes*, No. 04-cr-80623, 453 F. Supp. 3d 1011, 1015–16 (E.D. Mich. Apr. 13, 2020) (citing *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010)) (noting that, in this Circuit, the § 3142(g)(2) factor looks only to the weight of the evidence that the defendant is a flight risk or a danger); *accord United States v. Sanders*, 466 F. Supp. 3d 779, 785 (E.D. Mich. 2020).

In the flight context in this case, analysis of the second factor largely comprises discussion of the first and third factors. The salient § 3142(g)(2) nonappearance considerations are Defendant's actions in discarding the firearm at the convenience store and disclaiming ownership, as discussed above, and his history of failing to appear in relation to traffic offenses, his criminal background and history of probation violations, and his substance use (including while on bond

4

for related state offenses), as discussed below. For these reasons, the second factor weighs in favor of detention based on risk of nonappearance.

### 3. Defendant's History and Characteristics

The third and final BRA flight factor evaluates Green's history and characteristics. 18 U.S.C. § 3142(g)(3).[3] The driving concerns are Green's history of failing to appear (on several occasions, albeit in relation to traffic cases), his prior bail jumping conviction, his previous probation violations, and his substance use history (including his unlawful substance use while on state release following the instant offense). *See id.* (considering, among other things, a defendant's past conduct, criminal history, record concerning appearance at court proceedings, and substance use history). Collectively, these facts demonstrate serious risk both of failure to appear for court proceedings, specifically, and of noncompliance with imposed conditions, more generally. Though Ms. Greer's testimony was credible and probative on the topic of condition availability, as discussed *infra*, the mitigating aspects of Green's history and characteristics (namely, his stable residence with Frenchilla and possible employment opportunity with her) do not outweigh the aggravating considerations. This factor thus weighs in favor of detention.

Per the PSR, in 2014, Green was convicted of bail jumping in the first degree as well as possession of cocaine. [PSR at 6].[4] In 2016 and 2018, probation violations were filed as to those offenses, but it does not appear that they resulted in consequences. [*Id.*]. In 2017, a bench warrant was issued for Green for violation of conditions of release relating to a cocaine offense, but the

---

[3] The fourth BRA factor, the nature and seriousness of any danger, does not bear on nonappearance risk. *See* 18 U.S.C. § 3142(g)(4).

[4] Green also has earlier (2006) probation violations in relation to drug offenses, as well as a conviction for leaving the scene of an accident. The Court does not heavily consider these dated convictions as current flight indicators but notes a broader pattern, as the PSR evinces, of condition violations and flight-related offenses.

5

charge ultimately was dismissed. [*Id.* at 7]. In 2019 and 2020, two failure to appear warrants were issued for Green in relation to a traffic proceeding in Lexington. [*Id.*]. Two other failure to appear warrants remain pending for Green in relation to other traffic cases from the fall of 2021. [*Id.* at 7-8].

Though the failures to appear in relation to traffic offenses are not independently concerning, together with Green's other nonappearance indicators—namely, the 2014 bail jumping and cocaine convictions and the 2017 bench warrant—they contribute to a pattern of unreliability, evasiveness, and noncompliance with conditions. Exacerbating the Court's concerns is Green's substance use while on pretrial release for the related state firearm possession offense. At the detention hearing, Greer admitted that Green had at times used marijuana, alcohol, and cocaine while living at her residence and while on state pretrial release (since May 2021). [Hearing Recording at 33:44]. This blatant noncompliance (indeed, commission of new offenses) while on release is seriously aggravating, and the substance use itself is also indicative of instability and possible unreliability. *See United States v. Rives*, No. 1:14-CR-00130, 2014 WL 12698578, at *3 (N.D. Ga. Oct. 7, 2014) (finding that commission of new criminal conduct while on supervision supports a finding of nonappearance risk); *United States v. Valentin-Cintron*, 656 F. Supp. 2d 292, 296 (D.P.R. 2009) (finding that users of controlled substances may "constitute[] a flight risk").

These facts all indicate nonappearance risk. Nor are the relevant positive aspects of Green's history and characteristics sufficient to outweigh them. Though Ms. Greer and Green have been in a stable relationship since 2016, and Ms. Greer presented as reliable and credible, she conceded that Green has not been compliant with state bond terms while residing at her home. Further, though she testified that Green has been attending college classes and that he could return to work for her if released, Ms. Greer noted that Green attends classes only a couple of days a

week, and it is unclear why Green has not been employed for Ms. Greer (or anywhere) since late 2020.

Most heavily favoring release in the nonappearance context is the fact that Green, with Ms. Greer's assistance and coordination, successfully self-surrendered on the instant federal Indictment and has not absconded while on state bond. [Hearing Recording at 24:00]. Ms. Greer testified that she and Green communicated with investigators to schedule and effectuate Green's self-surrender after they became aware of the charges. These circumstances certainly offer some assurance that Ms. Greer would promote Green's compliance with monitoring and other conditions designed to deter nonappearance. However, their value is somewhat diminished by Green's use of illegal substances (ostensibly with Ms. Greer's knowledge) while on bond at Ms. Greer's residence. On balance, and against the backdrop of Green's prior noncompliance and appearance issues, the third BRA factor thus favors detention based on nonappearance risk.

  **4.**  **<u>Availability of Flight Conditions</u>**

Green presented Ms. Greer, his long-term partner, as a proposed custodian and emphasized the availability of GPS monitoring and home detention. Ms. Greer was credible and persuasively testified that she closely followed the course of the state arrest and subsequent federal indictment and assisted in his self-surrender. However, she also conceded that Green has used unlawful drugs while at her house and on state release. The extent of Green's substance use disorder issues is not entirely known. Green has a history of noncompliance and probation violations, and he has failed to appear on several (some recent) occasions for various non-felony proceedings. Finally, Green's actions following the instant alleged offense—namely, handing a firearm to his minor son to avoid responsibility as law enforcement was arriving—further signal intent to avoid criminal consequences.

7

All of these facts suggest that Ms. Greer's custodianship, even if combined with monitoring, may not be sufficient to reasonably assure Green's consistent, reliable at proceedings in this case if released to her care. Green has demonstrated inclination and ability to circumvent conditions and attempt to avoid responsibility on multiple occasions. Accordingly, and in light of his history of failing to appear and related offenses, the Court finds that the United States has shown by a preponderance of the evidence that no conditions can reasonably assure Green's appearance as required.

Detention based upon nonappearance risk is warranted under the BRA.

**B.     RISK OF DANGER**

    **1.     Nature and Circumstances of the Offense**

The nature of the offense, though not triggering a presumption of danger, weighs in favor of detention because the offense involves a firearm. *See* 18 U.S.C. § 3142(g)(1). It further involves possession of the firearm by a prohibited person (a convicted felon).

Additionally, the circumstances of the alleged offense, as captured on the surveillance video and described by SA Knotts, heighten the danger risk. First, Green was observed approaching an unknown individual in the convenience store parking lot, communicating with him aggressively, and gesturing the firearm toward him in a visually threatening manner. [Hearing Recording at 05:01]. As police were arriving, Green was seen handing the operable firearm to his fifteen-year-old-son, who had been attempting to deescalate the altercation between Green and the unknown individual; Green's son ultimately faced related criminal trouble, and Green denied possession of the firearm. [*Id.* at 07:01]. The alleged offense details thus involve unlawful obtaining and possession of the firearm by a felon and threatening conduct involving the gun that risked open violence in a public setting. Moreover, that Green forced his son to take responsibility

8

for the firearm, equipping a minor with a working pistol in the process, is aggravating and adds to the danger risk.

Accordingly, the nature and circumstances of the alleged offense weigh in favor of detention based on danger.

### 2. Weight of the Danger Evidence

The Court next considers the weight of the evidence that Green is a danger to others or to the community. "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948. Together with the danger associated with the instant offense circumstances, the weight of the evidence of Green's dangerousness stems from his substantial criminal history that includes violence and controlled substance offenses, his past violations of conditional release, his substance use disorder, and (more critically) his recent use of cocaine and other substances while on state bond.

Though he has a lengthy juvenile record, the Court considers only Green's adult criminal history in assessing any danger risk.[5] In 2006, as a young adult, Green was convicted of trafficking in marijuana and an unidentified substance (per the record, cocaine); he was sentenced to 5 years' imprisonment after violating the terms of his probation. [PSR at 5]. Green was also convicted in 2006 of leaving the scene of an accident/failure to render assistance or aid (previously charged as assault) and of trafficking in cocaine. [*Id.* at 5-6]. He was sentenced to 5 years in prison after a probation violation in the latter criminal case. In 2013, Green was convicted of possession of cocaine and of bail jumping. [*Id.* at 6]. The PSR reflects two possible probation compliance

---

[5] Green's juvenile record, beginning at age 13, includes assault, probation violations, and several instances of cocaine possession. [PSR at 3-4].

9

issues, though it appears they were ultimately resolved in Green's favor. In 2014, Green was convicted of assault (domestic violence). The PSR also notes a 2017 bench warrant issued for a violation of Green's terms of conditional release related to a later-dismissed cocaine possession charge. [*Id.* at 7].

Additionally, per the PSR, Green conceded that he had used marijuana, alcohol, and cocaine within the two weeks prior to his federal arrest. [PSR at 3]. Green's live-in partner, Ms. Greer, confirmed that he had used these substances while residing at her home. [Hearing Recording at 33:45]. Green was on bond for the related state firearm possession charges at the time. The record reflects that Green has struggled with cocaine use from an early age, and he has engaged in both inpatient and outpatient treatment in the past. Given his history of substance use disorder, Green's recent substance use is particularly concerning, and the fact that he was on state bond at the time of his recent reported uses is heavily aggravating as to danger risk. *See, e.g.*, *United States v. Turkette*, No. 1:18-CR-82-TLS, 2018 WL 4793113, at *3 (N.D. Ind. Oct. 4, 2018) (finding that a fifteen-year history of substance use disorder coupled with recent weekly use of controlled substances while on state conditional release was aggravating and indicated dangerousness). And, combined with Defendant's admitted substance use in recent months, the overlapping firearm possession alleged in this case becomes more volatile and dangerous.

For all of these reasons, there is weighty evidence of Green's dangerousness, and the second BRA factor ultimately weighs in favor of detention.

### 3. **Defendant's History and Characteristics**

The Court next assesses Green's history and characteristics, to include his past conduct and character, family and community support, substance use disorder history, and criminal history. 18 U.S.C. § 3142(g)(3)(A). The latter two considerations—Green's criminal history and his

substance use disorder history, including his recent drug use while on state bond—weigh strongly in favor of a finding of dangerousness for the reasons already discussed. Green's criminal record is peppered with controlled substance offenses and some violence, and he has a history of violating terms of conditional release. Green's criminal history also concerningly overlaps with his own substance use disorder issues, increasing the likelihood of noncompliance with release terms, as has happened in recent months in relation to the related state offense.[6] All of these facts indicate that Green is dangerous to the community and that he may not abide by conditions.

On the other hand, Green's family support and ties weigh in his favor. Ms. Greer credibly testified about her active involvement in Green's legal matters and her continuing support for him. The two reside together and Ms. Greer offered to employ Green. This reflects positively on Defendant and mitigates some (but not all) of the Court's danger concerns, as discussed *infra* in relation to condition availability. Finally, relatively little is known about Green's past conduct or character, and these considerations are ultimately neutral. Though Ms. Greer testified to Green's positive presence in his children's lives, his conduct with his teenage son in the instant offense is discouraging. And, despite Green's upcoming potential employment with Ms. Greer, he has had a spotty history of work in the past.

---

[6] Ms. Greer testified that she believed that Green was not subject to any release conditions during the state bond period. The PSR reflects that he was not subject to monitoring, but that he was required to avoid committing new offenses. The Court perceives it reasonable that, at a minimum, a person subject to a criminal bond would recognize that he could not commit new crimes during the term, and that anyone closely involved in his affairs would likewise assume that he could not commit new offenses. The record does not supply any apparent explanation or justification for Green's repeated violation of his state bond in recent months.

11

Ultimately, balancing Green's criminal history and history of bond/probation violations against his support from Ms. Greer, this factor indicates some danger risk and weighs at least slightly in favor of detention.

### 4. Nature and Seriousness of the Danger

The Court next considers "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C § 3142(g)(4). SA Knotts testified to particular circumstances in this case that, though they do not indicate danger risk tied to Green directly, highlight the potential broader community harm associated with the instant offense conduct. Per SA Knotts, investigators traced the firearm allegedly possessed by Green at the convenience store (as observed on the surveillance footage and as recovered following pursuit and apprehension of Green's minor son) using the National Integrated Ballistic Information Network ("NIBIN"). [Hearing Recording at 09:45]. The firearm returned a link to an October 2020 homicide in Lexington that resulted in the apparently inadvertent death of an elderly woman.

Though SA Knotts and the record both confirm that there is no known connection between Green and the homicide, the gun's perilous past highlights the often-unscrupulous origins of weapons obtained unlawfully by convicted felons and the danger and violence that can result along the way. Accordingly, weapons possession offenses like this one pose serious danger risk to the community at large. Further, in this case, both Green's minor son and others in public at the convenience store were placed at serious risk of danger by Green's conduct, as described by the detention hearing testimony. For these reasons, the fourth and final factor also weighs in favor of finding that Green is dangerous to others and to the community.

### 5. Availability of Danger Conditions

Given Defendant's history of noncompliance and the seriousness of the controlled substance, weapons, and other danger concerns at play, the Court is not persuaded that locational monitoring, home detention, and/or third-party custodianship would adequately assure community safety. Though Ms. Greer's testimony was compelling, and the Court believes that she would make the best possible efforts to monitor Green and to assist in his compliance, the record shows that she has been unable to conform Green's conduct to date during his state bond term. Further, Green's past controlled substance violations have occurred at his residence, where he would propose to be released and monitored/detained.

In light of Green's history of substance use disorder and related offenses, the drug-related recent bond issues are particularly worrisome, and the Court is not convinced that the available conditions could adequately assure community safety. *See*, *e.g., United States v. Mack*, No. CV113CR00150RC, 2014 WL 12684474, at *2 (D.D.C. June 12, 2014), aff'd, 841 F.3d 514 (D.C. Cir. 2016) (concluding, "given [the defendant's] previous history of drug use and possession and his poor record of complying with the provisions of probation and supervised release," that even "release into high intensity supervision would still pose some danger to the community"). Here, bearing in mind the serious nature of the danger risk in this case, the Court thus finds that the United States has shown by clear and convincing evidence that no conditions can reasonably assure the safety of others and of the community. Detention based on danger risk is thus warranted.

### III. CONCLUSION

Accordingly, the Court finds, per the relevant evidentiary standards, that detention is appropriate under the BRA on both nonappearance and danger grounds, as no conditions are available to reasonably assure appearance and safety. The Court thus **GRANTS** the United States'

oral detention motion.  As the BRA requires in this case, Green must remain in custody pending trial.  The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

    Entered this the 28th day of December, 2021.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge